[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM
In this action, the plaintiff alleges that the defendants made a false misrepresentation to them concerning the adequacy of water available to them in a house purchased from the defendants, and that such misrepresentation induced them to go through with the purchase. There is no question but that almost immediately after moving in, it developed that the water supply was woefully inadequate for normal household purposes. There are substantial questions as to when this inadequacy developed.
The contract of sale was executed on March 1, 1988. The plaintiffs inspected the house at an open house shortly before that. The defendants were not present and indeed did not even meet the plaintiffs until the closing on April 22. At that open house, the agent of the defendants was present. A question was asked of the agent concerning water. There were varying versions as to the CT Page 2448 wording of the question but it was either "How's the well", "How's the water" or "How's the water supply"? There is a dispute as to the answer given, but I find as a fact that it was "Fine, as far as I know". Water was not discussed at the closing.
As noted, the closing was on April 22 and the defendants continued to occupy the house for the better part of a week and at the end of the week, the plaintiffs moved in. On the day of the move, they washed some dishes and one of the plaintiffs took a shower. Before completing the shower, the water ran out. During the course of that week, the next door neighbor was having a deep well dug and that process involved a pounding technique and it is logical to infer that such pounding would have impact on subterrean strata. Two experts for the plaintiffs testified that it was unlikely that the pounding would cause the well on the plaintiffs property to be adversely affected, but both agreed that it was possible.
There was testimony that the defendants had a water pump on the property and it was surmised from this that they used the pump to obtain water from an adjacent lake in order to flush the toilet, but no one ever saw it so used. The defendants admitted that they had the pump but explained their intention had been to use it at another location where they had a hunting camp that had no running water, and they did not do so because the pump was inoperable. The defendants had been seen carrying buckets of water from the lake into the house, and the defendants' explanation was that they used that water in a fish tank, some of the fish having been taken from the lake, and also to flush out clogs in the sewer line. The defendants had obtained water from a neighbor, but that was at a time when they were replacing the pump in their well. The defendant wife was observed on one occasion carrying laundry to a neighbor's house, and her explanation was that her dryer had broken down and the neighbor permitted her to use her dryer. The defendant wife did go on one occasion to a neighbor's house to rinse out her hair, but again this was done while the well pump was being replaced. A previous owner had gone to another location to shower, but at that time there was no shower or tub in the house.
As against all of this circumstantial evidence, all of which can be explained, the defendants had lived in the house for almost ten years with two adults and between two and four children, and it boggles the imagination that they would have done so with a water supply as inadequate as that encountered by the plaintiffs. Further, there was entirely credible testimony from a frequent visitor, who on occasion had stayed as long as a week, that he never experienced water problems, and that the defendants on occasion had a significant number of guests who used the facilities without trouble. CT Page 2449
On balance, I am forced to conclude that the plaintiffs simply have not borne their burden of proving that at the time of closing the defendants were aware of a water problem which they concealed. Despite the fact that it was only a short period of time, something must have happened between the closing and their entry into occupancy that caused the well to go bad.
Judgment may enter for the defendants.
J. HEALEY, STATE TRIAL REFEREE